Mr. Camden. Thank you your honor and may it please the court. The illegal re-entry statute section 1326 is unconstitutional for two reasons. The first and most important is that the removal proceedings and the order resulting from those proceedings which form an element of 1326 are based on factual findings and yet Congress has forbidden the jury from reviewing those factual findings. Those facts are hidden entirely and the jury is not given any access to be able to make an independent determination on those. The second is that these decisions, the removal orders that form an element of 1326 are essentially discretionary decisions. They're discretionary at every stage of the removal proceedings, whether to begin proceedings, who to subject proceedings, and then even if a person is factually deportable, whether to give that person relief. And the grant rates for these, for example, we included some statistics on asylum can be extremely high and extremely low depending entirely on the individual adjudicator and their the way that they exercise discretion. This does not comport with the Supreme Court's and this requirements on what can constitute an element of a criminal offense. Mr. Camden, this is Judge Thacker. But are the underlying facts of the removal or the validity of the removal order, is that an element of this crime or is it simply the removal itself? The way it's drafted and the element is only the bare existence of the removal order. So why isn't that a problem for you? Because removal orders are special kinds of facts. They're different than any other adjudicative facts, like whether somebody carried a gun or whether a person was in a certain place at a time, any of the adjudicative facts. The removal order is an administrative order that itself is based on findings of fact. So this is a fact, the existence of the order, that depended on other findings of historical fact by an executive official. So we have executive agency findings of fact being essentially smuggled into a case under the guise of the fact of removal order without the jury being given access to them. So it's helpful, I think, to illustrate if you look back at the history of this issue in the Supreme Court cases. Mendoza Lopez for Noam 15 said, even with the safeguards of allowing a collateral attack as a pretrial motion, even with those safeguards, the use of an administrative order is troubling. But they didn't resolve it in that case. They did cite to Justice Jackson and Frankfurter's dissent in the United States versus Specter. And Specter, in turn, kind of relates back to this case, I'll go all the way back to the beginning, Wong Wing. In Wong Wing, it was essentially the entire criminal matter was referred to the administrative agency. Commissioners, if they found somebody of Chinese descent without the required paperwork, were allowed to force them to do hard labor before deporting them or impose fines. Supreme Court said, no, of course, Sixth Amendment requires a trial by jury before any actual punishment is going to be imposed. So this violates the Sixth Amendment. Did Mendoza also indicate that the illegal reentry statute is constitutional, provided that judicial review is available? It said that at a minimum, judicial review must be provided, but it did not address the additional. Are you claiming that you were wrongfully precluded from judicial review or that the outcome of the underlying order would change with judicial review? No, Your Honor, this is a facial attack on the statute. We did not bring any specific facts about the removal order that occurred in my client's case. So the argument is the Sixth Amendment requires these facts be found by jury, but the statute Congress drafted forbids that. OK, go ahead. I apologize, Your Honor. Wong Wing involved this entirely the criminal matter being entirely in the province of the administrative agency. And then Specter comes along in 1954. And in that case, that's the first time Congress had made the order of removal the element of the crime. So it allowed the jury to determine all the facts about whether the person had refused to cooperate with the removal order that existed. But it took that issue of whether the person was here illegally, and it left it with the administrative agency. And that's the problem Justice Jackson in Frankfurt identified there is that this you can see a clear development where Congress initially puts it all to the agency and then give some things back to the jury, but keep some things under the cover of this removal order, this administrative order, and doesn't let the jury get into those facts. But those facts are still necessary to the crime. Just as even Mendoza-Lopez itself came before Prentice. So in my briefing, I've tried to kind of fit that argument in the framework of Apprendi. Apprendi says facts necessary to the imposition of punishment have to be found by a jury. So whether an alien is deportable on the grounds that are alleged in whatever the charging document was an immigration court is a fact that is necessary for the removal order, which is necessary for conviction. So it's there is one, you know, this and I acknowledge this is not an issue that has been frequently raised and on which there are many cases and we're trying to narrowly distinguish. This is sort of an open question across the board. The one I found is United States versus England. It's a tax case from the Sixth Circuit. And it's helpful if you look at the tax context. In tax cases, the government must prove not only the existence of the order, but the validity of the order. So a person charged with evading a tax can come into court and defend on the grounds that, yeah, they issued this order, this order, you know, this assessment, tax assessment exists, but it was wrong. I actually didn't know any taxes. An illegal entry defendant has no option to do that. They're forbidden in the way that 1326 was written and construed in Mendoza-Lopez. They're forbidden from saying, actually, you know what, I wasn't even deportable. Or there's a factual issue where they haven't proven that I'm deportable or there's a reasonable doubt about whether I was deportable at the time. So these are facts that are getting, essentially, the problem here is that if, it helps to look at it from the other perspective, if the government's fault, and if Congress can make an administrative agency adjudication into an element of a crime, what does that allow Congress to do? If you look at, and there are cases on both sides of this, so the Subversive Activities Control Board was enacted in the 1950s over President Truman's veto, and its job was to determine whether organizations were communist action organizations, and then issue orders that had criminal consequences attached. Now, that board got completely dismantled by the Supreme Court in a series of cases because of other constitutional problems with the First Amendment and the right against self-incrimination, but it shows what this empowers Congress and the executive branch to do and how it can evade traditional jury requirements. If you look at, in another case, we cited the Rhode Island Commission to Encourage Morality and Youth. More recently, the Supreme Court in 2018 had the Masterpiece Kick Shop case on the other sort of political side of this, where Colorado had set up a commission that had the sell goods, you know, in violation as they argued against the fact that there is some judicial review of these orders available. Does that help or hurt your argument, or it just doesn't matter one way or the other in your view to your argument? I don't think it matters, Your Honor, because the heart of the argument is this is a Sixth Amendment right, and so whether judicial review is provided or not, no jury ever gets to find these facts. There's no opportunity for that. And also, even though, as Justice Jackson and the Inspector of Dissent identified, even the judicial review is extremely deferential to the administrative agency, so the agency gets the benefit of findings of fact. It's affirmed if there's any substantial evidence and not proof beyond a reasonable doubt. There's no right to cross-examine, or at least no constitutional absolute right to cross-examine the witnesses that provide this information, and the right to an attorney for people that can't afford it, which is almost everyone. Mr. Camden, can we change course just a minute and talk about the sentencing? My question is, did the district court acknowledge or even consider your client's arguments regarding sentencing disparity or his own? Regarding the staleness of the drug convictions, I do not believe the district court mentioned them. He acknowledged the existence of those convictions and that they were from that age, but the argument that they were stale and therefore had a less predictive power under the 35 criteria factors, I didn't see that in the record. Regarding, I apologize, the other specific arguments. It was disparity. It was disparity, Your Honor. It was a disparity argument. The district court asked a question in the course of my arguments. At the time, he asked whether the criminal history of the individuals, the cases that we submitted as comparators, were identical, and obviously they were not. Although they were similar, I argued because they fell within the same criminal history category. But the district court didn't follow up on that question and didn't mention, as far as I could recall, and as having reviewed the JA, I don't believe the district court addressed that argument, frankly. That was a very short answer. No, I don't think any two people have identical criminal history. The court says, okay, that's fair. The guidelines say similar record, not identical, and then he just says, okay. That's the extent of it. And this gets to the heart, I think, of the dispute is the district court clearly heard the arguments. I mean, he asked a question. He's listening to arguments. So he heard these arguments. But sentencing reasonableness requires that the district court not only acknowledge that the argument was made, but explain for appellate review, but also so Mr. Perez-Paz can hear it, why that argument did not serve to lower his sentence. Why it did not justify the sentence that I requested on his behalf. And I think Blue and Rita and Slappy and all of these series of cases, the district court has to explain whether and why the facts that are cited in the arguments move the needle on that 353A factors. The government cites Arbaugh, which is a case that came out earlier, I believe late last year, or possibly earlier this year. It's a very recent case, for the bare proposition that the district court need not address every argument that's made. That's a very qualified statement, I think. The district court need not address any non-frivolous argument or any frivolous arguments. But the other well before that, that are published cases, do require the district court to address non-frivolous arguments. And I'm not saying it has to be expansive or in-depth or super detailed. It's just, Mr. Perez, your attorneys pointed out that the convictions are 20 plus years old, and therefore that they don't really tell me much about whether you're likely to recidivate if you're released. I acknowledge that, but it's outweighed by this. Or I disagree with that. I actually think it does tell us something about your behavior today, or in the future, that we can predict. So all I have to do is finish that sentence with, I agree with it, but it's outweighed by, or I disagree with that because. And there'd be enough, at least, for this court to review, and for Mr. Perez to pause to go and serve his 46-month sentence, knowing at least that the district court heard what his appointed attorney said. And so he can serve that sentence, knowing why he's there. And so those are the arguments, I think, and that's really the heart of the matter is that the district court has to address it under the 35-day factors, not just acknowledge the argument. If there are no further questions at this point, I think I'll simply reserve the rest of my time. Thank you. Thank you, Mr. Kambian. Rono. Morning, Your Honor. May it please the the sort of whole heart of his argument is grounded in the Sixth Amendment jury trial, right? But the Sixth Amendment has never been used to expand the statutory elements. It's simply made that when a fact is in a criminal statute and is relevant to punishment, that fact must be found by a jury. In fact, the Supreme Court said explicitly in Schriero that the Sixth Amendment does not affect the substantive range of conduct that Congress can prohibit. When we combine that with the statement from the Supreme Court in Mendoza-Lopez and this court's decision in Hamoud about the designation of a foreign terrorist organization, I think those two cases disprove the idea of a transitive property of statutory elements, that some facts necessary to something Congress has made an element of a criminal offense itself becomes an element of the criminal offense. Once we're in this context, Mendoza-Lopez was very clear that the validity of the removal order is not actually an element of the statute, and therefore there's nothing for the jury to pass on when it comes to that. Mendoza-Lopez was concerned primarily with a lack of due process ability to challenge or obtain judicial review of the proceeding in the first instance at all. And that was an animating theme in the cases that Mr. Kambian has been citing, including Yackas and Wong Wing. Specter, even Justice Jackson's dissent in Specter was focused on the lack of ability of the defendant to challenge the use of an administrative proceeding as an element of his statute, whether that was validly passed at all. And I think when we take Congress's amendments to 1326 into consideration, Congress has actually adopted a very protective statutory framework for defendants in this context. They are guaranteed judicial review of the validity of their removal order, including in cases, as this court recently held, where expedited removal prevents judicial review in the first instance. This course just recently held that, in fact, a defendant in a 1326 proceeding can collaterally challenge an expedited removal order and obtain judicial review of that validity. So we're not dealing with the kind of concerns that I think are animating Mr. Kambian's argument about Congress hiding the ball or hiding facts behind administrative agency determinations. This is a context in which the gravamen of what Congress has punished is, after having been told that an individual is not permitted within the United States under the immigration laws, they then take steps to do so anyway. It's not the direct criminalization of an agency adjudication. And I think that makes a difference. Turning to Judge Floyd's questions about the sentencing, I think this court has been very careful to walk a line between requiring enough comment in the sentencing procedures to allow for effective appellate review and to provide an explanation to defendants, while not micromanaging the sentencing process. And I think that's the tension between cases like Arbaugh on one hand and Blue on the other. Mr. Kambian suggests that this decision would have been fine had the district court said, I agree or I disagree, but. And I think at that point, that's tending too much into the micromanaging aspects of the sentencing procedures. Here, the district court made it very clear that it was engaged with the arguments. And when it provided the sentencing explanation, it said what it thought was the most critical factor, which was the lack of deterrence over a consistent period of time. Once the district court has, in fact, acknowledged, as Mr. Kambian agrees, that he heard these arguments, that he under this court's precedence. Counsel, you mentioned this where I'm using your words now, that the court ought not to be engaged in micromanagement. But isn't that exactly what individualized sentencing is? It's not the macro, it is the micro. For a district court, absolutely, Your Honor. The district court is required, in fact, to make individualized determinations. I think cases like Arbaugh say that this court is not engaged in micromanaging the district court's particular sentence. So, while the district court is absolutely applying an individualized one. Right. We're not micromanaging, we're reviewing. And that's the key. It needs to be enough in the record so we can review it. So, the problem is if it's non-existent or so micro, if you will, is like you can't even see it, it can't be reviewed. So, it does require, in the slappy and blue, you know, non-frivolity. Talk about the circumstances, those things in terms of the trauma in terms of his family and needs. Those things are not, do you think those are frivolous? Not at all, Your Honor. But I would say that the district court actually addressed them in this context. It pointed out the fact that, for example, Mr. Perez-Paz's concerns about violence in his home country, it said, I find them distinguishable because it were directed at the United States. Excuse me. Think about that. Because it was his brother, wasn't it? Yes, Your Honor. And the district court said because it wasn't directed toward him? Yes, Your Honor. And Your Honor, again, this is in the whether or not the district court made abuses of discretion. The district court has a wide degree of discretion as to what it can find relevant to sentencing and how it balances those factors. But the argument that Mr. Camden has made is that the sentencing explanation was adequate. And I think here, I think the district court did enough. It may not have been exhaustive and it may not have been as comprehensive as the defendant or Mr. Camden would have wished. But I do think the district court was conscientious that it acknowledged the arguments raised and explained why it was picking the sentence that it did. If the court has no further questions. So what you're saying is that, and this is a hypothetical, you're saying that if, for example, there's a case where a person had lost all of their children in a fire and they're sentencing their trauma, as long as the judge said, I understand that you lost all the children in the fire, but it wasn't you who was burned up. That would be enough. For terms of a sentencing explanation, Your Honor, yes, I think it would. I think if the district court says I've considered this argument, but I find this factor outweighs it and I balance the 3553A factors to come to X sentence, I think in terms of this court's sentencing explanation precedence, that would be sufficient. Or you could say I don't care. Same thing, right? Yes, Your Honor. Although there's a separate, I think there would be other challenges that a defendant could make perhaps to substantive reasonableness about including or disregarding whether or not the balance was so out of whack that the district court had abused its discretion in coming to the conclusions or had abused discretion by weighting one factor too heavily, things like that. But again, in the sentencing explanation context, all we're looking for is that the district court has in fact acknowledged arguments made by the defendant and stated its reasons for imposing the sentence that it did in light of those arguments. This law says consider, it doesn't say anything about acknowledging, just acknowledging? Well, yes, Your Honor. I think consider and acknowledge are similar. I think if the district court says, yes, I hear you, and then says nothing else, that probably is not sufficient. But here the district court said, yes, I understand, but I find this to be the most important factor in this case. And I think that indicates that the district court was engaged in the balancing of 3553A factors the statute requires. Unless the court has any further questions for me, we will rest on our briefing. Thank you, Mr. Brownell. Mr. Camden, you have some time reserved. Yes, Your Honor. Regarding the threats, it was not only his brother. After his brother was murdered, the gangs actually arrived at his sister's house and made threats to her and said, if you don't leave here, what happened to your brother is going to happen to you. And there was actually an affidavit we provided. That's at JA 172. And the government essentially is making the argument as to the sentence that if the district court acknowledges it, the argument in mitigation, but then says some other factor justifies the sentence that that automatically, we can infer that the district court thought that that factor was outweighed. And I don't agree with that. I think the cases are clear that if the district court believes that this factor outweighs the arguments in mitigation, it has to say those factors are outweighed by this. Or I agree that a lower sentence would be justified except the need for, say, deterrence or protection of the public is higher in this case and won't allow me to go down and give effect to it. When I suggested that the district court could finish a sentence saying I agree with this, but, or I disagree, but that's not exclusive. And to rebut the micromanaging point, it doesn't have to be in any particular formula. And it can, in fact, be in the course of the argument. If the district court interrupts and has questions and has a discussion, just like we're having right now, that make its views clear about what it thinks about the argument under the 35-53a factors, then that's enough. It just has to be somewhere in the record. It doesn't have to be a formal pronouncement. But to present, you know, his brother's death certificate, his sister's affidavit, the testimony of his wife about the surgeries she's endured, his United States citizen son's birth certificate and the circumstances regarding his abandonment by biological mother, and then to make an argument tying all those to the 35-53a factors and then hearing nothing except for the factors that are in aggravation in the explanation of the sentence, just, I don't know what the district court thought. I don't believe the record allows anybody reading it to conclude what the district court made of those arguments. And that's the reason we need a remand of the sentence. Very, if there are no further questions on the sentence, which I'd like to answer any questions the court has on that, if not just briefly to go back to the Sixth Amendment problems, judicial review does not cure this problem. The government relies on 1326 and says people there under 1326d, which governs collateral attacks, are guaranteed judicial review. They're not, because the government routinely argues that judicial review was available, but the person didn't avail themselves of it previously, or didn't exhaust their administrative remedies to avoid reaching the merits of whether a person was deportable as charged. There's a Supreme Court case now, Palomar-Santiago, where the person was a lawful permanent resident. He was ordered removed because of a DUI, which we now know after Leocal is not even a grounds to remove the person. So he should still be here with his family. But the government is arguing right now that because he had failed pro se to appeal administratively this determination at the time, years ago, before a criminal case without a lawyer, that he is prohibited from collaterally attacking him. And, you know, a jury is never going to get to, and didn't get to under the way 1326 is drafted, didn't get to say whether he was deportable at the time. This is a very easy issue for Congress to cure. It can make the validity of the warrant an element again, like it did before the current amendments to 1326. One last note, the government cites Hamoud. These terrorist cases and the designation of foreign terrorist organizations are rules of general applicability. These are not agency adjudications. So when Congress or the executive designates an organization as a terrorist organization, that means I can't contribute money to it. John Doe on the street can't contribute money to it. It's a regulation that applies to everyone. So I'm only challenging the use of adjudications. These are ordered to do something. And really, we need to look at the flip side. The problem here is that the government wants to extend contempt power to administrative agencies. Judicial orders against a person can be enforced by imprisonment if the person doesn't obey it. But in no other circumstance has Congress allowed an agency to issue an order and then provided for criminal felony punishment of a violation of those orders without the fact finder in the criminal case being to review the facts that went into the order itself. Contempt is an Article III power. It's an inherent Article III power necessary to the adjudication or to the exercise of Article III powers. And extending it into the executive branch is a bridge too far. It is giving far too much power and it would violate separation of powers concerns. I see my time is up. Thank you for that. I like you to respond to this and help me because that, and I understand your argument in terms of looking at the idea of apprending and fairness. But hear me out first and then try to, I'm not making comments. These are what we think about when you talk about a right to a jury trial. Isn't the problem is this is one of these kind of rare kettle of fish where fairness really, unfortunately, has nothing to do with it, unfortunately. Because you write, you could be deported. It's a body of discretion. For example, A can have the same situation as B, but by the discretion of the attorney general in that process, they said, we're going to grant you this, allow you to stay, another person deported. So even if a jury had that question put to them, what would they determine? They would still have to judge it by discretion. It wouldn't be, well, wait a minute. If I were deciding this case, I never would have deported him. It can't be that, right? It would still have to be what they would decide whether or not it was a proper, see what I'm saying? Baked in there is the discretion that, you know, for example, even our court, for example, we can't grant asylum. We can see, whether or not there's a violation and send it back, but only the attorney general can grant asylum. Even this court can. So, I mean, for example, so how do you, how would you do that? What would that look like in terms of jury instructions for a jury to determine it, even though you're right, it impacts sentencing, but how could it? Tell me. In my briefing, your honor, I think I identified that problem. It's the second argument, sort of under the fifth amendment that this discretion goes into the orders as well as factual findings. I don't frankly have a good solution to that. I think it is a problem, and I think it's a problem that implicates the fifth amendment, but you're right. This is not a factual determination or even a mixed question of fact and law under Gaudin that would still go to the jury. It's essentially a value judgment. I think one solution would be that, I mean, you could treat it as a mixed question of fact and law under Gaudin, and that would go to the jury, and the jury would just decide whether this removal order should have entered. I don't think Congress intended that with 1326, so I don't know that the court could remedy it that way. That's the whole problem I've got with this. We could remedy it. If you could remedy it by striking things, that'd be fine, but we can't remedy it by adding stuff to the statute that lets the jury get things Congress didn't let them. But I think that's the problem with these purely discretionary orders. Two people identically situated, one goes in front of immigration judge A and gets asylum and is here, the other goes in front of B and gets asylum denied, judicial review denied because it's deferential, deported, and then comes back to see his family because of threats in his home country, and he's charged with 1326, and the only thing that separated them is the executive discretion that was being exercised. So I don't think there is a way. Elements have to be factual findings, so there's no real way to submit that to a jury, and it's just another reason why 1326 violates the Constitution. All right, thank you. Thank you, Mr. Camden. Grano, thank you so much for your arguments. We can't come down and greet you personally as we would do in our wonderful tradition, but nonetheless, we very much appreciate you being here for your fine arguments on these difficult cases, and I wish that you would be safe and stay well. Thank you so much. Thank you.
judges: Roger L. Gregory, Henry F. Floyd, Stephanie D. Thacker